UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MICHAEL STURGIS,

        Petitioner,                                   Hon. Robert Holmes Bell

v.                                                    Case No. 1:07-CV-177

CINDI CURTIN,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Sturgis' petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Sturgis' petition be **denied**.

## BACKGROUND

As a result of events which occurred between November 2002 and April 2003, Petitioner was charged with engaging in child sexually abusive activity; distributing or promoting child sexually abusive material; possessing child sexually abusive material; accosting, enticing, or soliciting a child, under the age of 16, for immoral purposes; and fourth degree criminal sexual conduct. (Trial Transcript, February 9, 2004, 7-9). Several individuals testified at Petitioner's jury trial, the relevant portions of which are summarized below.

1

**James Young**

As of August 4, 2003, Young was employed as a detective sergeant with the Michigan State Police, specializing in forensic video analysis. (Trial Transcript, February 9, 2004, 115-17). On this date, Sergeant Young received "a crumpled up videotape that had been pulled out or broken out of a VHS shell." (Tr. 117). The videotape was "torn" and "broken in several pieces." (Tr. 118). Sergeant Young was able to retrieve the information from the videotape, which was then shown to the jury. (Tr. 118-24).

**Michael McMaster**

Petitioner began dating McMaster's sister, Christine, on November 14, 2002. (Trial Transcript, February 9, 2004, 129-30). Christine informed Petitioner that she was only 16 years of age. (Tr. 131). Petitioner was 36 years old. (Tr. 132). At the time, Michael and Christine lived with their father. (Tr. 127-28). Beginning "about Christmas of 2002," Petitioner began living with Christine on the weekends. (Tr. 128).

Early in 2003, Petitioner asked Michael to set up a video camera so that he could make a "pornographic" video with Christine. (Tr. 130-31). Michael later viewed the video, which depicted Petitioner and Christine having sex. (Tr. 132-35). On another occasion, Petitioner, Michael, Christine, and Christine's friend, Megan Brumbaugh, were outside smoking marijuana when Petitioner "grabbed" Megan's breasts and stated that he wanted her to participate in sex with him and Christine. (Tr. 134). Petitioner was aware at the time that Megan was 15 years of age. (Tr. 135). Megan "smacked" Petitioner in response. (Tr. 134).

**Christine McMaster**

Christine began dating Petitioner on November 14, 2002. (Trial Transcript, February 9, 2004, 142). At the time, Christine was 16 years of age and Petitioner was 36 years old. (Tr. 142, 144). The pair immediately began having consensual sex. (Tr. 143). Petitioner later asked Christine to make a "porn video" with him. (Tr. 143-44). Christine initially refused, but later agreed and the two were filmed having sex. (Tr. 143-45). Petitioner later showed this videotape to at least two other people. (Tr. 145-46). Petitioner told Christine that he wanted to use this videotape "to make a porn site on the internet" so that he could "make money." (Tr. 151).

Approximately three months later, Christine told her mother about making a pornographic video with Petitioner. (Tr. 147). Christine's mother "freaked out" and she and Christine immediately drove to Petitioner's residence to retrieve the videotape. (Tr. 147). Christine telephoned Petitioner to warn him that her mother was on her way to retrieve the videotape. (Tr. 147-48). When Christine and her mother arrived at Petitoner's residence, the videotape was "in a bag but it was busted up and smashed and the tape was out of the casing." (Tr. 148).

Petitioner also talked to Christine "a lot" about the pair having sex with one of her friends. (Tr. 150). Petitioner "really wanted" Christine's friend, Megan Brumbaugh, to have sex with them, but Christine told Petitioner that "she was only 14 and it could be a problem." (Tr. 150-51). Nevertheless, on at least one occasion, Petitioner tried to pressure Megan to have sex with him and Christine. (Tr. 149-51). When Megan refused, Petitioner "started grabbing her breasts and her butt and pretty much playing with her and harassing her until she finally kicked him and got him off of her." (Tr. 150).

3

**Megan Brumbaugh**

Sometime "around" March 2003, Petitioner asked Megan to have sex with him and Christine. (Trial Transcript, February 9, 2004, 162). Megan thought "it was kind of a joke at first," but realized differently when Petitioner began getting "pushy" about the matter. (Tr. 162). Megan testified that Petitioner was "always asking me and Christine to have a three-some with him and always saying sexual things to me and grabbing my chest and my butt." (Tr. 162-63). Petitioner's behavior made Megan feel "upset" and "kind of violated." (Tr. 163). Megan repeatedly told Petitioner that she was only 14 years old, but Petitioner responded that he "didn't really care how old [she] was." (Tr. 164-65). Megan was also aware that Petitioner wanted to make a "porn video of Christine" for the "internet" so that he could "make money." (Tr. 165-66). Megan later learned that Petitioner had, in fact, filmed himself and Christine having sex. (Tr. 166).

**Cheryl McMaster**

Cheryl is Christine McMaster's mother. (Trial Transcript, February 9, 2004, 171). In May 2003, Cheryl learned that Petitioner had made a videotape of him and Christine having sex. (Tr. 172). Cheryl immediately drove to Petitioner's residence to retrieve the videotape. (Tr. 173). Christine retrieved the videotape, which had been "ripped to shreds and busted in half, broke in half." (Tr. 173-75).

**Michael Sturgis**

Until he "split up" with Christine, Petitioner was unaware of the existence of the videotape showing him and Christine having sex. (Trial Transcript, February 9, 2004, 186-87).

According to Petitioner, Cheryl McMaster and another man telephoned him and stated that "they wanted money from [him], that they had this tape that had me and Christina on it." (Tr. 186-87). They told Petitioner "if they didn't get the money, they were going to the police." (Tr. 187). Petitioner acknowledged that he and Megan Brumbaugh spoke about "having a three-some," but Petitioner told Megan that he "wouldn't have nothing to do with [her] because [he] knew exactly how old she was." (Tr. 187-88). Petitioner also denied ever touching Megan's breast or butt. (Tr. 188).

Following the presentation of evidence, the jury found Petitioner guilty of engaging in child sexually abusive activity; possessing child sexually abusive material; accosting, enticing, or soliciting a child, under the age of 16, for immoral purposes; and fourth degree criminal sexual conduct. (Trial Transcript, February 10, 2004, 223). Petitioner also had one previous felony conviction and five previous misdemeanor convictions. (Sentencing Transcript, March 8, 2004, 21-22). Petitioner was sentenced to 10-30 years for engaging in child sexually abusive activity; 3-6 years for possessing child sexually abusive material; 3-6 years for accosting a child for immoral purposes; and 18-36 months for fourth degree criminal sexual conduct. (Tr. 25-26). Petitioner appealed his convictions in the Michigan Court of Appeals, asserting the following claims:

> I. Defense counsel was constitutionally ineffective in failing to object to joinder of the charges for trial based on unfair prejudice.
>
> II. Where one of the complainants was only fourteen years old, defense counsel was constitutionally ineffective in failing to challenge for cause a juror who stated she thought a child would be truthful.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Sturgis*, No. 254348, Opinion (Mich. Ct. App., Sept. 15, 2005). Asserting the same two claims, Petitioner

moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Sturgis,* No. 129994, Order (Mich., Mar. 27, 2006). On February 26, 2007, Petitioner initiated the present action in which he asserts the same two claims identified above.

## **STANDARD OF REVIEW**

Sturgis' petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

7

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

In certain circumstances, however, the deferential standard articulated above does not apply. First, if the state court resolves a particular claim but fails to articulate its analysis, the Court must apply "modified AEDPA deference." *Vasquez v. Jones*, 496 F.3d 564, 569-70 (6th Cir. 2007). Under this standard, "the court conducts a 'careful' and 'independent' review of the record and applicable law, but cannot reverse 'unless the state court's decision is contrary to or an unreasonable application of federal law.'" *Id.* at 570. However, where the state court has altogether failed to review a particular claim, such is reviewed de novo. As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). In such circumstances, the court conducts a *de novo* review. *Id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

8

## ANALYSIS

**I.        Joinder of Charges**

Petitioner was charged with several crimes in this matter. The crimes of engaging in child sexually abusive activity and possessing child sexually abusive material concerned the videotape that Petitioner made of him and Christine McMaster having sex. The crimes of accosting a child for immoral purposes and fourth degree criminal sexual conduct related to Petitioner's actions involving Megan Brumbaugh. These charges were pursued simultaneously, requiring Petitioner to defend against them in a single proceeding. Petitioner asserts that his trial attorney was ineffective for failing to object to the joinder of these various charges.

To establish that he was denied the right to the effective assistance of counsel, Petitioner must establish that his counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accordingly, Petitioner must demonstrate that his attorney's actions were unreasonable under prevailing professional norms. *Id.* at 688. In assessing such a claim, however, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). This is a heavy burden for

9

Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

Under Michigan law then in effect, a criminal defendant was entitled to have "unrelated offenses" severed for separate trials. *See People v. Robertson*, 2002 WL 31105300 at *3 (Mich. Ct. App., Sept. 20, 2002) (quoting Michigan Court Rule 6.120). By the same token, a trial court was not required to sever related offenses. *Robertson*, 2002 WL 31105300 at *4 (citing Michigan Court Rule 6.120). In this context, offenses are "related" if they are based on (1) the same conduct, or (2) a series of connected acts or acts constituting part of a single scheme or plan. *See People v. James*, 2001 WL 1167457 at *1 (Mich. Ct. App., Oct. 2, 2001) (quoting Michigan Court Rule 6.120).

The Michigan Court of Appeals rejected this particular claim, finding that counsel was not ineffective for failing to seek a severance of the various charges in this matter. In support of this conclusion, the court observed that:

> Here, [Petitioner] used his relationship with the sixteen-year-old female to perpetrate the child sexually abusive acts, and to have contact with the fourteen-year-old female. The relationship and access to the fourteen-year-old female could be characterized as a continuous series of events. . .Further, much of the same testimony would have been necessary to establish the elements of the charges relating to either complainant, and would have been admissible at separate trials. One may question retrospectively that a discretionary motion to sever would have been successful, but such a question does not require a finding and we do not find that defense counsel's failure to bring such a motion was a clear mistake. Therefore, defendant has not established that his trial counsel's failure to move to sever the charges was objectively unreasonable.

*People v. Sturgis*, No. 254348, Opinion at 2 (Mich. Ct. App., Sept. 15, 2005) (internal citations

omitted).

Moreover, even if the Court were to assume that counsel was ineffective for failing to request a severance in this matter, Petitioner cannot establish that he was prejudiced by his attorney's alleged shortcoming. First, as the Michigan Court of Appeals observed, even if a motion for severance had been granted evidence of Petitioner's crimes against one of the victims would have been admissible in a trial concerning only Petitioner's crimes against the other victim. Also, the jury was properly instructed that it "must consider each crime separately" and that it was free to find Petitioner guilty or not guilty of "all or any combination of these crimes." (Trial Transcript, February 10, 2004, 220). Furthermore, Petitioner cannot establish that the outcome would have been different had a motion for severance been granted. The evidence of Petitioner's guilt was overwhelming and the charges against Petitioner were sufficiently distinct that it is unreasonable to assert that the jury was unable to distinguish the various offenses charged and the evidence applicable to each.

In sum, the decision by the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision is not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, the Court concludes that this claim raises no issue upon which habeas relief may be granted.

**II.      Jury Selection**

Petitioner next asserts that his trial attorney was ineffective for failing to challenge for cause a particular juror during jury selection. Petitioner's claim arises from the following exchange, during jury *voir dire*, between the prosecutor and two potential jurors:

> Prosecutor: Mr. Beer, do you think that you would view a child's testimony more critically that you would an adult's?
>
> Juror #6: I believe so, yes.
>
> Prosecutor: Why is that?
>
> Juror #6: I just think a child would be truthful.
>
> Prosecutor: Okay. A child would be truthful?
>
> Juror #6: Yes.
>
> Prosecutor: Miss Kishigo, what do you think?
>
> Juror #5: I would have to agree with him.

(Trial Transcript, February 9, 2004, 57).

Petitioner asserts that his attorney was ineffective for failing to remove for cause juror number five.

The Sixth Amendment guarantees to every criminal defendant "the right to an impartial and unbiased jury." *Miller v. Webb*, 385 F.3d 666, 672 (6th Cir. 2004) (citing *Morgan v. Illinois*, 504 U.S. 719, 727 (1992)). To protect this right, defense counsel has a responsibility to utilize the *voir dire* process "to identify and ferret out jurors who are biased against the defense." *Webb*, 385 F.3d at 672 (citations omitted). Because counsel's decisions during voir dire "are considered to be matters of trial strategy," deference is accorded such. *Id.* (citations omitted). A

12

strategic decision cannot form the basis for a claim of ineffective assistance "unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Id.* at 672-73 (citation omitted).

A criminal defendant is entitled to a new trial "if an impaneled juror's honest responses to questions on *voir dire* would have given rise to a valid challenge for cause." *Id.* at 673 (citations omitted). When a juror is challenged for cause, "the relevant question is 'did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed.'" *Id.* (quoting *Patton v. Young*, 467 U.S. 1025, 1036 (1984)). Moreover, a juror "need not be 'totally ignorant of the facts and issues involved.'" *Webb*, 385 F.3d at 673 (quoting *Murphy v. Florida*, 421 U.S. 794, 800 (1975)). Rather, "it is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Webb*, 385 F.3d at 673 (citations omitted).

In addition to making the comment noted above, the juror in question also indicated that she could be a "fair and impartial" juror, base her verdict "only on the evidence that's presented," and "follow the court's instructions. . .on the law." (Trial Transcript, February 9, 2004, 32). The juror also indicated that she believed that people are responsible for their actions "whether [they're] younger or older." (Tr. 36). The Court discerns no evidence that the juror in question should have (or would have) been disqualified for service due to bias or impartiality. Petitioner has failed to overcome the presumption that his attorney's decision not to challenge this juror for cause or remove her through use of a peremptory challenge was a valid strategic decision. The Michigan Court of Appeals rejected this claim, concluding that:

> The thought that a child would testify truthfully is nothing more than
> a belief in a vacuum. Alone, it does not demonstrate bias against a

> party, state of mind or opinion that would prevent a fair and just verdict on presented facts, or an improper influence on the deliberative process. Answers to other questions were balanced, for example, that people are responsible for their actions, regardless of age. With answers like those received from the impaneled juror as compared to those utilized by counsel in invoking both for cause and peremptory challenges, defense counsel may have included her on the jury as a matter of trial strategy. Defendant has not demonstrated that the juror could have been properly challenged for cause, or that he was. . .denied a fair trial on the basis of the person's inclusion on the jury.

*People v. Sturgis*, No. 254348, Opinion at 2 (Mich. Ct. App., Sept. 15, 2005).

The decision by the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision is not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, the Court concludes that this claim raises no issue upon which habeas relief may be granted.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Sturgis' petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    Respectfully submitted,

Date: January 11, 2010    /s/ Ellen S. Carmody
    ELLEN S. CARMODY
    United States Magistrate Judge